EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mobile Universe Corporation<br>Peticionario-Recurrente<br><br>v.<br><br>Departamento de Educación,<br><br>Heriberto Padín Rodríguez<br>Junta de Revisión<br>Administrativa, et als<br>Recurridas<br>_____<br>Spacenet, Inc.<br>Recurrente<br><br>v.<br><br>Junta de Subastas del<br>Departamento de Educación<br>Recurrido<br>_____<br>Centenal of Puerto Rico,<br>Operation Corp.<br>Peticionario<br><br>v.<br><br>Departamento de Educación<br>Recurrida<br><br>Puerto Rico Telephone<br>Company, Inc.<br>Licitador Agraciado | Certiorari<br><br>2006 TSPR 171<br><br>169 DPR _____ |

Número del Caso: CC-2006-759

Fecha: 13 de noviembre de 2006

Tribunal de Apelaciones:

    Región Judicial de San Juan-Panel II

Juez Ponente:

    Hon. Troadio González Vargas

Abogado de la Parte Peticionaria:

    Lcdo. Harry Anduve Montaño
    Lcdo. José A. Morales Boscio

Abogada de la Parte Recurrida:

    Lcda. Viviana Rodríguez Ortiz

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mobile Universe Corporation<br>    Peticionario–Recurrente<br><br>            v.<br>Departamento de Educación,<br>Junta de Revisión<br>Administrativa, *et als*<br>    Recurridas | |
| Spacenet, Inc.<br>    Recurrente<br><br>        v.<br><br>Junta de Subastas del<br>Departamento de Educación<br>    Recurrido | |
| Spacenet, Inc.<br>    Recurrente<br><br>        v.<br><br>Junta de Subastas del<br>Departamento de Educación<br>    Recurrido | CC–2006–759 |
| Centennial of Puerto Rico,<br>Operation Corp.<br>    Peticionario<br><br>        v.<br><br>Departamento de Educación<br>    Recurrida<br><br>Puerto Rico Telephone<br>Company, Inc.<br>    Licitador Agraciado | |

RESOLUCIÓN

San Juan, Puerto Rico, a 13 de noviembre de 2006

Atendida la Petición de Certiorari presentada por parte peticionaria, Mobile Universe, se provee no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López expediría. La Juez Asociada señora Rodríguez Rodríguez expediría y emite opinión disidente. El Juez Asociado señor Fuster Berlingeri no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mobile Universe Corporation<br>　　Peticionario-Recurrente<br><br>　　　　v.<br>Departamento de Educación,<br>Junta de Revisión<br>Administrativa, *et als*<br>　　　Recurridas | |
| Spacenet, Inc.<br>　　Recurrente<br><br>　　　　v.<br><br>Junta de Subastas del<br>Departamento de Educación<br>　　　Recurrido | |
| Spacenet, Inc.<br>　　Recurrente<br><br>　　　　v.<br><br>Junta de Subastas del<br>Departamento de Educación<br>　　　Recurrido | CC-2006-759 |
| Centennial of Puerto Rico,<br>Operation Corp.<br>　　Peticionario<br><br>　　　　v.<br><br>Departamento de Educación<br>　　Recurrida<br><br>Puerto Rico Telephone<br>Company, Inc.<br>　　Licitador Agraciado | |

Opinión Disidente de la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 13 de noviembre de 2006

Una Mayoría de los miembros de este Tribunal rehúsa expedir el auto solicitado en este caso dejando en pleno vigor una sentencia patentemente errónea dictada por el Tribunal de Apelaciones, en la cual se desatienden nuestros claros precedentes sobre los procesos de adjudicación de

subastas.   Debo en consecuencia disentir del errado curso de acción de la Mayoría.

Veamos someramente sólo algunos de los elementos sobresalientes del procedimiento seguido por el Departamento de Educación en este caso para la adjudicación de los servicios de interconexión de internet, así como del dictamen del tribunal apelativo intermedio.

**I**

Trata este caso de una controversia sobre el proceso para la adjudicación de los servicios de interconexión de internet para las escuelas públicas de Puerto Rico, bajo el programa conocido de "E-Rate 2006-2007".[1]

En noviembre de 2005, el Departamento de Educación comenzó el proceso de adjudicación de los servicios interconexión a través del procedimiento de petición de propuestas ("request for proposal" por sus siglas en inglés "RFP").   Poco después, en el mes de diciembre, se celebró el acto de apertura de los pliegos de licitación.   En este proceso, las siete compañías que habían licitado tuvieron la oportunidad de discutir los detalles de las mismas, conocer los costos que cada una cotizó, así como los equipos a utilizarse.

---

[1] A tenor con la ley federal de telecomunicaciones, el "Telecommunications Act of 1996", 47 U.S.C. sec. 251, el programa de fondos E-Rate provee descuentos hasta de 90% en los costos de acceso y conexión a la internet para las escuelas.   Estos fondos se nutren del "Fondo de Servicio Universal" a través de impuesto a los usuarios de servicios de comunicaciones.   La Compañía Administrativa del Fondo de Servicio Universal, por sus siglas en inglés USAC, administra dicho fondo y opera bajo la supervisión de la Comisión Federal de Comunicaciones.

El RFP original requería que se utilizara tecnología satelital. El Departamento de Educación (el "Departamento") decidió enmendar sus requerimientos para permitir también el uso de líneas terrestres además de la alternativa satelital. A esos efectos, el 11 de enero de 2006 el Departamento publicó un nuevo RFP.

El 17 de enero, se celebró la reunión de apertura de los pliegos de licitación. En la reunión se le informó a los licitadores que no se abrirían los pliegos de licitación ya que los mismos serían evaluados por un comité evaluador de propuestas (el "Comité"), integrado por personas que nombraría el Secretario de Educación a tenor con el "Procedimiento Especial" aprobado por el Secretario conforme contempla el Reglamento 7040 del Departamento de Educación. El Departamento informó que en o antes del 8 de febrero de 2006 el Comité habría de notificar su decisión.

El Comité seleccionó la propuesta de la Puerto Rico Telephone Company, Inc. (la "PRTC") por ser la más "costo-efectiva."[2] El Comité notificó su selección a través de un correo electrónico a los licitadores el 16 de febrero de 2006. Dicho correo indicaba, citamos:

> Thank you for the submittal of your proposal to the Puerto Rico Department of Educations (PRDE) in response to RFP seeking Internet Access and other eligible services funded through the Universal Service Administrative program commonly known as E-Rate.

---

[2] El RFP disponía que el factor del precio se le otorgaría un 30% del peso. Es decir, era un factor de importancia, como era de esperarse, pero no el único.

> The PRDE Evaluation Committee was required, pursuant to Federal Communications Commission (FCC) Rules and Regulations and E-Rate Program guidelines to select the most cost-effective proposal presented for evaluation using cost as the primary factor, among other factors.
> After careful review and evaluation of our proposal and strict adherence to E-Rate Program rules and regulations and all applicable Commonwealth laws and regulations, PRDE did not select your proposal (…) as the winning proposal because it was not the most cost effective, among other factors.

Esta "notificación" de la adjudicación no contenía ninguna otra información; como por ejemplo, el nombre de la compañía agraciada o las razones mínimas para el rechazo.

El 21 de febrero, mediante comunicación general dirigida a todos los "licitadores", el Departamento anunció que el "licitador" agraciado había sido la PRTC y mencionó quiénes eran los otros licitadores.[3] En esa misma fecha, el Departamento anunció, a través de un nuevo correo electrónico, que tendría "disponible para lectura el original de la propuesta sometida por el licitador agraciado de los fondos de e-rate en la sala de reuniones del Centro de Cómputos . . . ." Anunció además que la propuesta estaría disponible para revisar ese día de 1:00pm a 4:00pm y, al día siguiente de 9:00am a 12:00 del mediodía y de 1:00pm a 4:00pm. Finalmente, indicó que cualquier

---

[3] La comunicación electrónica enviada leía así: "Informamos por este medio que la compañía Puerto Rico Telephone (PRT) fue la compañía que se le adjudicó la subasta de los fondos e-rate en la cual ustedes estaban participando. El total de participantes fue de 7 compañías a saber: Achieve, AT&T, Centenial de Puerto Rico, Mobile Universe, PRT, Spacenet y TData/LTD."

información adicional se tramitaría a través del director legal del Departamento.

Oportunamente varios de los licitadores impugnaron administrativamente la determinación del Comité ante la Junta de Revisión Administrativa del Departamento. En vista de que dicha Junta no tomó acción alguna dentro del término provisto por ley, las licitadoras acudieron ante el Tribunal de Apelaciones. En los recursos presentados se adujeron varios errores, específicamente, se cuestionó la adjudicación en los méritos a PRTC, así como la validez del proceso seguido para la adjudicación y notificación de la buena pro.

El foro apelativo consolidó los recursos presentados por los licitadores y emitió una Resolución el 24 de marzo de 2006, declarando con lugar las mociones en auxilio de jurisdicción presentadas por las partes ordenando así la paralización de los procedimientos ante la Junta de Subastas. Se le concedió un término al Procurador General para que se expresara.

Luego de varios incidentes interlocutorios ante el foro apelativo que no son necesarios reseñar, el Procurador General compareció y, entre otras cosas, indicó que el Departamento de Educación y la PRTC habían suscrito el 16 de febrero de 2006 el contrato para llevar a cabo el proyecto subastado. Es decir, el contrato fue suscrito el mismo día en que se les notificó a las licitadoras que sus propuestas no habían sido seleccionadas.

El 12 de junio de 2006, el Tribunal de Apelaciones dictó sentencia confirmando la adjudicación de la subasta a la PRTC.  Insatisfechos aún, Mobile Universe Corporation y Centennial of Puerto Rico comparecieron ante este Tribunal señalando esencialmente los mismos errores que adujeron ante el tribunal apelativo.  Por las razones que paso a discutir disiento de la decisión de la Mayoría de negarse a expedir el auto solicitado.

**II**

Como indiqué, se cuestiona ante nosotros la determinación del Tribunal de Apelaciones de validar el proceso de subasta llevado a cabo por el Departamento de Educación en este caso.  El foro *a quo* esgrimió varios fundamentos para su determinación, a mi juicio todos errados.  Me explico.

Primero, sobre el asunto de falta de notificación adecuada de la adjudicación de la buena pro la decisión del foro apelativo es, como poco, sorprendente.  Por un lado se indica, correctamente, que aun cuando el proceso seguido no fue el de subasta formal hay "cierta información básica que los proponentes deben conocer, tales como el nombre del licitador seleccionado, la razón por la cual fue rechazada la propuesta sometida por el licitador rechazado y el nombre de los demás licitadores." Sentencia, pág. 28.  Se reconoce además, que "cada una de . . . [las] comunicaciones aisladamente no habrá satisfecho los requerimientos de información básica y esencial", pero

entonces se concluye que "vistas ellas conjuntamente logran ese objetivo mínimamente." *Id.*, pág. 31. Aceptar el razonamiento del foro revisor implica avalar una notificación a todas luces inadecuada. Baste señalar que ya el *RBR Const., S.E. v. A.C.*, 149 D.P.R. 836, 853-855 (1999), nos expresamos, como correctamente nos señalan los peticionarios, sobre el curso de acción a seguir cuando se da una notificación defectuosa. Véase también, *L.P.C.& D, Inc. v. A.C.*, 149 D.P.R. 869 (1999).

De otra parte, el trato del foro apelativo al requisito de advertir a los licitadores sobre el derecho que les asiste para solicitar reconsideración y revisión de la adjudicación de la buena pro es por demás insostenible. El foro apelativo intermedio reconoció que en efecto, el Comité, al notificar la adjudicación de la subasta omitió hacer tales advertencias a los licitadores perdidosos. Señaló sin embargo, que ello no tenía mayores consecuencias pues, "[e]n el presente caso, en la medida que la parte recurrente ejercitó oportunamente su derecho a agotar los remedios disponibles contra el dictamen emitido, la omisión de la agencia, **gracias a la diligencia de dicha parte** no tuvo consecuencias graves sobre su derecho al debido proceso de ley." *Id.*, pág. 33.

No es mucho lo que debamos decir al descartar el errado curso de acción del Tribunal de Apelaciones. Es una proposición de **autogarantía del debido proceso de ley. Es decir, si una parte privada en su relación con el gobierno**

**es diligente en el reclamo de sus derechos, renuncia a invocar violación a alguna exigencia de debido proceso de ley pues con su actuación diligente suplió las deficiencias del gobierno garantizándose a sí mismo el debido proceso de ley**. Parece evidente el porqué no podemos suscribir este razonamiento. Más grave aun, "[e]l no haber advertido del derecho a procurar revisión judicial **impide que comience a transcurrir el término para instar la correspondiente acción de revisión judicial**." (Énfasis nuestro). *Pta. Arenas Concrete, Inc. v. Jta. de Subastas*, 153 D.P.R. 733, 738 (2001). Véase además, *IM Winner, Inc., v. Mun. de Aguadilla*, 151 D.P.R. 30 (2000). A todas luces el tribunal apelativo actuó sin jurisdicción.

Finalmente, en los recursos presentados se han levantado serios argumentos sobre el proceso informal autorizado por el Secretario del Departamento de Educación y si éste era verdaderamente el procedimiento a utilizar para la adjudicación del proyecto subastado. Estas interrogantes han quedado sobre el tapete. El razonamiento del foro apelativo para descartar esta alegación se revela poco feliz. Entre otras razones nos apunta que, habiendo participado los peticionarios en el procedimiento de licitación no pueden ahora impugnar el mismo, pues "[e]videntemente, al así proceder se allanaron a ese proceso y consintieron acogerse al mismo. Así las cosas y en virtud de la doctrina de los actos propios, están impedidos ahora de cuestionar este procedimiento."

Sentencia, pág. 24. Si el proceso utilizado por el Departamento de Educación no estaba autorizado en ley el mismo es ineficaz. La participación de los licitadores en un proceso viciado de nulidad no torna el mismo en uno inmune a todo cuestionamiento.

Las desviaciones de los requerimientos de debido proceso de ley en el proceso de notificación de la buena pro en esta subasta obligaba a este Tribunal, a mi juicio, a expedir el auto solicitado. Las exigencias de debido proceso no son meros requisitos técnicos, inconsecuentes o superfluos. Como tampoco son meros preciosismos de los cuales podemos dispensar cuando nos resulten engorrosos.

Como señalamos en *RBR, supra*, pág. 856:

> Los tribunales tenemos el deber de asegurar que al efectuar sus gestiones de compra y contratación, las instrumentalidades públicas cumplen con la ley, con sus propios procedimientos y que tratan de forma justa a los licitadores. En fin, que los dineros del pueblo se gastan en beneficio del interés público. No debemos perder de perspectiva que el Gobierno es el comprador y contratante más grande del país. La adecuada fiscalización de la utilización de los dineros del erario resulta de vital importancia para mantener la confianza del ciudadano en el Gobierno y una democracia saludable.

Por las razones antes indicadas disiento del curso de acción de la Mayoría.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada